UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, § § § | |
| Plaintiff, § § | |
| V. § | CIVIL ACTION NO. 3: 05-CV-0416-B |
| § | |
| PREMIUM INCOME CORPORATION, et al., § § § § | |
| Defendants. § | |

## MEMORANDUM ORDER

Before the Court is Plaintiff United States Commodity Futures Trading Commission's ("CFTC") Motion for Summary Judgment Against Defendant Gerald Leo Rogers ("Rogers") (doc. 221 *incorporating by reference* doc. 176), filed August 30, 2007. Because Defendant Rogers fails to create a genuine issue of material fact regarding his violation of federal commodities laws, the Court GRANTS Plaintiff's motion.

## I. BACKGROUND[1]

This is an enforcement action by the CFTC against several defendants for violations of § 4(c)(b) of the Commodities Exchange Act and §§ 1.1(d), 32.9, and 32.11 of the regulations promulgated thereunder. 7 U.S.C. § 6(c)(b); 17 C.F.R. §§ 1.1(b), 32.9 and 32.11. It arises out of an investment scheme involving foreign currency covered call options.[2] During 2003, Rogers

---

[1]A more thorough account of the facts of this case can be found in the Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment Against Defendant Gerald Leo Rogers. (doc. 178)

[2]"Covered call options are call options sold, or written, against an asset that one owns (called 'cover'). If the covered call is ever exercised by the holder of the option, the writer of the option can satisfy the

1

solicited brokers for an investment program purportedly involving the sale of foreign currency covered call options. (Singleton Dep. 39:17-41:6, 63:18-64:9 at APP 0195-196, 0201[3]) Subsequently, Rogers and PIC began soliciting customers through brokers and the company's website to participate in the aforementioned foreign currency covered call transactions. (Sullivan Decl. ¶ 7 at APP 1149; PIC website at APP 1259-1279) The specific representations at issue will be discussed during the Court's analysis of Rogers's alleged violations. Rather than engage solely in the longer-term covered call transactions advertised to investors, Rogers engaged in short-term call and put options as well as uncovered foreign currency options and non-option foreign currency trades. (Hofius Dep. 51:18-52:12, 57:15-64:1 at APP 0145-48; Req. for Admiss. p. 3 at APP 1933; Synthesis Bank Trading Records at APP 1936-47) This resulted in great losses to the PIC investors.

Plaintiff filed its case against Defendants Premium Income Corp. ("PIC"), Inforex, Ltd., Tri-Forex International, Ltd.[4], Gerald Leo Rogers, and Alexander Igor Shevchenko on March 2, 2005. (doc. 1) Shortly thereafter, the Court signed an ex parte temporary restraining order and ordered that Defendants' assets be frozen, their books and records be preserved, and a temporary receiver be appointed. (doc. 10) On March 14, 2005, the Court granted consent orders of preliminary injunction, enjoining Defendants from violating § 4(c)(b) of the Commodities Exchange Act and

---

exercise by delivering the cover. The covered call writer exchanges the opportunity to participate in potential increases in the value of the asset that he uses for cover for the option premium that is received from the sale of the call option. (Statement of Undisputed Material Facts ¶ 18 (citing J.A. at APP 2587, 2592, 2596, 2601-03))

[3]All citations to APP refer to the CFTC's and SEC's Joint Appendix in Support of Motions for Summary Judgment Against Defendant Gerald Leo Rogers. Although the CFTC and SEC pursue separate cases against Rogers, they have provided a joint appendix to the Court because both cases involve the same facts and evidence.

[4]Premium Income Corp., Inforex, Ltd., and Tri-Forex International, Ltd. will be referred to collectively as the Corporate Defendants.

§§ 1.1(d), 32.9, and 32.11 of the Regulations. (docs. 27-30, 39) Then, on September 9, 2005, the Court granted an interlocutory judgment by default against the Corporate Defendants. (doc. 86) In its judgment, the Court granted a permanent injunction against Corporate Defendants and required them to pay disgorgement, restitution, and a civil monetary penalty. (Interlocutory J. at 3-4) The CFTC initially moved for summary judgment against Rogers on November 15, 2006. After reviewing the evidence provided by Plaintiff and holding a hearing on the matter, the Court determined that the CFTC had not established its jurisdiction over the case. (Order Denying S.J. at 4) Accordingly, the Court denied the CFTC's motion without prejudice and allowed it to refile the motion with the proper proof of its jurisdiction. (*Id.*) The CFTC now moves for summary judgment against Defendant Rogers on all of its claims. The parties have briefed the issues and the Court now turns to the merits of its decision.

## II. LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). Generally, the burden lies with the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and all inferences must be drawn in its favor. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002). If the evidence submitted would allow a reasonable jury to return a verdict for the non-movant, a genuine issue remains and the court cannot grant summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Alternatively, a movant may meet its burden by showing that its opponent failed to present sufficient

evidence to establish an essential element of the case where the opponent bears the burden of proof for that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With this standard in mind, the Court now turns to the parties' arguments.

## III. ANALYSIS

### A. The CFTC's Jurisdiction Over the Transactions in Question

Section 2(c)(2)(B) of the Commodity Exchange Act ("CEA") gives the CFTC jurisdiction over "an agreement, contract, or transaction in foreign currency that is . . . an option . . . and is offered to, or entered into with, a person that is not an eligible contract participant, unless the counterparty . . . is" a financial institution, a registered broker or dealer or a registered futures commission merchant, an associated person of a registered broker or dealer or an affiliated person of a registered futures commission merchant, an insurance company or a regulated subsidiary or affiliate of such an insurance company, a financial holding company, or an investment bank holding company. 7 U.S.C. § 2(c)(2)(B). The CFTC satisfies the first prong of the jurisdictional provision by providing evidence, such as PIC's website, which shows that Rogers solicited funds from investors for the purpose of engaging in foreign currency option transactions. (PIC Website at APP 1259-79) In response to Plaintiff's showing, Rogers argues that the CFTC does not have jurisdiction over the PIC program and attempts to avail himself of the foreign currency exemption described in *Dunn v. CFTC*, 519 U.S. 465 (1997). (Def.'s Resp. at 4) At the time of the *Dunn* decision, the CEA contained an exemption for foreign currency transactions that courts have largely interpreted to exempt interbank transactions from the CFTC's jurisdiction because those financial institutions were already subject to banking regulation. *See CFTC v. Int'l Foreign Currency, Inc.*, 334 F. Supp. 2d 305, 312-313 (E.D.N.Y. 2004). However, in December 2000, Congress promulgated the Commodity Futures Modernization Act, which removed the foreign currency exemption from the CEA and

4

enacted the current § 2(c)(2)(B) of the CEA. Because the foreign currency exemption is no longer in force, it is irrelevant to the CFTC's jurisdiction over Rogers's transactions.

Next, Plaintiff has satisfied the second prong of the jurisdictional test by showing that the PIC investors were not eligible contract participants. Under the CEA, an eligible contract participant is defined as

> an individual who has total assets in an amount in excess of--
> **(I)** $10,000,000; or
> **(II)** $5,000,000 and who enters into the agreement, contract, or transaction in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual.

7 U.S.C. § 1a(12). Thus, to prove that the investors in the PIC scheme are ineligible contract participants, the CFTC must show (1) that the investors did not have total assets in excess of $10,000,000 <u>and</u> (2) that the investors did not have assets in excess of $5,000,000 and enter into the agreement, contract, or transaction in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be incurred, by the individual. To this end, the CFTC has provided the Court with sworn declarations from 130 PIC investors explaining that they do not have total assets in excess of $10,000,000 and that they "do not have assets in excess of $5,000,000 and did not enter into the agreement, contract or transaction with PIC to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be incurred." (App. to Second Mot. for Summ. J. at APP 2598-726)

Finally, the CFTC has satisfied the final prong of the jurisdictional test by demonstrating that Rogers's transactions did not include a proper counterparty—a financial institution, a registered broker or dealer or a registered futures commission merchant, an associated person of a registered broker or dealer or an affiliated person of a registered futures commission merchant, an insurance company or a regulated subsidiary or affiliate of such an insurance company, a financial holding

5

company, or an investment bank holding company. 7 U.S.C. § 2(c)(2)(B)(ii). Indeed, PIC cannot be categorized as any of the proper counterparties listed in the CEA. (Gomersall Aff. ¶ 24 at APP 1258) Moreover, even though Rogers represented that PIC had an agreement with Union Bank Inter.net ("UBI") to write foreign currency options, UBI cannot serve as a proper counterparty for the transactions because it and its parent company, Churchill Bank Group, are not legitimate entities. (Berkowitz Decl. & Exs. 1-3 at APP 1427-37) Because the CFTC has established that it has jurisdiction over the transactions engaged in by Rogers and PIC, the Court will now examine the alleged violations.

B.     The Alleged Violations[5]

   1.     Fraud

The CFTC contends that Rogers violated § 4c(b) of the CEA by acting in contravention of Regulations 1.1 and 32.9. (Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br.") at 14) Regulation 1.1 prohibits fraud in connection with foreign currency transactions subject to the CEA and makes it unlawful for a person acting directly or indirectly

> (1) To cheat or defraud or attempt to cheat or defraud any person;
> (2) Willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or
> (3) Willfully to deceive or attempt to deceive any person by any means whatsoever.

17 C.F.R. § 1.1(b). Similarly, Regulation 32.9 prohibits fraud in connection with commodity option transactions and makes it unlawful for a person acting directly or indirectly

> (a) To cheat or defraud or attempt to cheat or defraud any other person;
> (b) To make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof;

---

[5] While citations to the substantial amount of evidence supporting Plaintiff's claims can be found in the Statement of Undisputed Facts, in the interest of time, the Court will cite a more limited subset of that evidence during this ruling.

6

(c) To deceive or attempt to deceive any other person by any means whatsoever.

17 C.F.R. § 32.9. In order to establish that Rogers committed fraud in violation of the commodities laws, the CFTC must show: "(1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality." *CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1328 (11th Cir. 2002). A representation, statement, or omission qualifies as material when "there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *R&W Technical Servs. Ltd. v. CFTC*, 205 F.3d 165, 169 (5th Cir. 2000) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

In the instant case, the SEC has shown that Rogers made many misrepresentations and omissions during solicitation of brokers and investors for his investment program in foreign currency options. For example, it remains undisputed that Rogers represented that the PIC program would produce guaranteed profits and that the investors' principal was completely safe. (Connally Decl. ¶¶ 10-17 at APP 1133-34; PowerPoint Script p. 3 at APP 1184; PIC Website at APP 1259, 1271) These statements about the potential for profits and the degree of risk are material because a reasonable investor would always consider those two factors in making a decision to invest. The declarations of experts Michel Robe and Ronald Hobson show that these representations are false because investors bear significant currency risk, as well as downside risk and credit risk so profits cannot be guaranteed. (Hobson Decl. ¶¶ 34-42 at APP 2593-94; Robe Decl. ¶¶ 41-52 at APP 2608-11) Most importantly, the undisputed facts show that Rogers also misrepresented that 100% of investor funds would be dedicated to engaging in the foreign currency covered call transactions advertised by PIC. (Client Presentation p.3 at APP 0609; Delin Decl. ¶11 at APP 1035; Power Point Script p.3 at APP 1184) These misrepresentations are material as well because if a reasonable investor knew what his funds would actually be used for once deposited with PIC and that he would

7

not be seeing the returns promised by Rogers, the website, and the brokers, he would not invest in the PIC plan. These representations were false because the majority of investor funds were transferred through various accounts to Inforex accounts at Saxo Bank in Denmark and Synthesis Bank in Switzerland. (*See, e.g.*, Rogers Dep. May 5, 2006 120:9-121:2, 150:13-153:12 at APP 0030-31, 0038-39; AEA Bank Signature Card at APP 0386; AEA Fund Transfer Agreement at APP 0412) Once deposited in the foreign banks, Rogers used a large portion of the funds to engage in short-term call and put options as well as uncovered foreign currency options and non-option foreign currency trades, rather than the longer-term covered call transactions advertised to investors. (Hofius Dep. 51:18-52:12, 57:15-64:1 at APP 0145-48; Req. for Admiss. p.3 at APP 1933; Synthesis Bank Trading Records at APP 1936-47; Robe Decl. at APP 2611-15) These transactions resulted in millions of dollars in trading losses. (Synthesis Bank Trading Records at APP 1936-47; Robe Decl. at APP 2601, 2615-17) Rogers provides no evidence to create a genuine issue of fact as to the his representations and omissions or their materiality. Having found no disputed issues of material fact with respect to Rogers's material misrepresentations and omissions in connection with foreign currency transactions and commodity options transactions, the Court will now examine the CFTC's showing of scienter.

A defendant has acted with scienter if he "intended to defraud, manipulate, or deceive, or it Defendant's conduct represents an extreme departure from the standards of ordinary care." *R.J. Fitzgerald & Co.*, 310 F.3d at 1328. A plaintiff may establish scienter by providing evidence that the defendant's misrepresentations "were made intentionally and with knowledge of their falsity." *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 448 (D.N.J. 2000). Thus, a court may find scienter "when the defendant's conduct involves intentional omissions or misrepresentations that present a risk of misleading customers, either known to the defendant or sufficiently manifest that the defendant

'must have been aware of' the risk." *CFTC v. King*, 2007 WL 1321762, at *2 (N.D. Tex. May 7, 2007) (Lynn, J.) (citing *R.J. Fitzgerald*, 310 F.3d at 1328). The undisputed evidence provided by the CFTC demonstrates that Rogers knew he and his brokers were providing materially false information to PIC investors. Most importantly, Rogers originated all of the information about the PIC program that was given to brokers and passed along to investors. (Singleton Dep. 43:12-20, 124:22-127:5 at APP 0196, 0216-17; Rogers Decl. ¶ 2 at APP 0583; Uszyski Decl. ¶ 10 at APP 0868; Praul Decl. ¶ 11 at APP 1141) Further, he created the content for the PIC website as well as a script for soliciting investors. (Singleton Dep. 97:11-18 at APP 0210; Delin Decl. ¶ 17, 28 at APP 1036, 1041) Moreover, while a few of brokers created their own additional materials to help solicit clients, these materials were all based upon the information provided by Rogers, and Rogers approved the training materials created by broker coordinator Bill Singleton before sending them to other brokers. (Singleton Dep. 77:7-78:7, 204:16-211:7 at APP 0205, 0236-38; Delin Decl. ¶ 21, 23, 25-27 at APP 1038-40) Thus, the Court finds that the evidence provided by the CFTC shows that Defendant Rogers acted with scienter at least as to his misrepresentations about the use of investor funds. In sum, Rogers originated all information about the PIC program that appeared on PIC's website and created or approved all materials that PIC sent to its brokers. In turn, brokers based their communications with their investors on the information provided to them by Rogers and PIC. Because Rogers also had control over the use of the investors' funds, he had to have known that 100% of the funds were not being used for the covered call transactions specified by the investors when they deposited their money with PIC. Therefore, because the undisputed evidence before the Court establishes that Rogers violated § 4c(b) of the CEA and Regulations 1.1 and 32.9 and because Rogers has failed to create a genuine issue of material fact as to these violations, the Court GRANTS summary judgment for the CFTC on those claims.

### 2. Off-Exchange Options Transactions

Plaintiff next seeks to hold Rogers liable for his off-exchange foreign currency options transactions. (Pl.'s Br. at 18-19) Under § 4c(b) of the CEA and § 32.11 of the regulations promulgated thereunder, an individual may not "solicit or accept orders for, or [] accept money, securities or property in connection with, the purchase or sale of any commodity option, or [] supervise any person or persons so engaged" unless the transaction is conducted on or in accordance with the rules of a contract market or a foreign board of trade. 17 C.F.R. § 32.11; 7 U.S.C. § 6c(b). In the instant case, Rogers operated PIC to solicit and engage in the offer and/or sale of foreign currency transactions as evidenced by the company's website. (PIC Website at APP1259-79) Additionally, the CFTC investigator found that PIC had never applied for registration or been registered with the CFTC as a contract market. (Gomersall Decl. ¶ 22 at APP1258) Therefore, PIC did not execute its off-market transactions "on or subject to the rules of a contract market." Furthermore, Rogers conducted the transactions in Inforex accounts at Saxo Bank in Denmark and Synthesis Bank in Switzerland. (*Id.* ¶ 23) Necessarily, he did not conduct the transactions in question on a foreign board of trade. Rogers provides no evidence to refute or to create a genuine issue of material fact as to the CFTC's showing of his violation of the commodities laws. Accordingly, the Court grants the CFTC's motion for summary judgment as to its claim that Rogers violated § 4c(b) of the CEA and § 32.11 of the regulations promulgated thereunder.

### III. RELIEF REQUESTED

**A.     Permanent Injunction**

First and foremost, the CFTC requests that the Court permanently enjoin Rogers from further violations of § 4c(b) of the CEA and Regulations 1.1(b), 32.9, and 32.11. (Pl.'s Br. at 23) Additionally, the CFTC asks the Court to prevent further harm to the public by permanently

banning Rogers from the commodity industry. (*Id.* at 24) District courts enjoy broad discretion in fashioning appropriate relief for violations of the CEA and the commodities regulations. *CFTC v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978). Section 6c of the CEA permits the district court to enjoin acts or practices which violate the CEA. 7 U.S.C. § 13a-1. Because the CFTC has already established violations by Rogers, now it need only show that there is a reasonable likelihood of future violations. *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979). While the court is permitted to infer the likelihood of future violations from past misconduct, the court must look at the totality of the circumstances in deciding to grant a permanent injunction. *Id.* To this end, the court may consider factors such as whether the defendant maintains that his conduct was blameless and whether the instant violation was based on "systematic wrongdoing, rather than an isolated occurrence." *Id.*

In the instant case, Rogers defrauded approximately 161 PIC clients, which resulted in client losses of $10,959,181. Thus, Defendant's acts were systematic rather than a single, isolated incident. Additionally, this is not Rogers's first violation of the CEA. In 1993, the United States District Court for the Central District of California permanently enjoined Rogers from violating the contract market provisions of the CEA. (Misc. Orders at APP 1593-1625) Moreover, Rogers does not acknowledge that his actions were wrong and instead blames his clients' losses on actions taken by the SEC and CFTC. (Rogers Decl. ¶¶ 9-27 at APP 0584-89) Thus, the Court concludes that Rogers's current violations and his pattern of fraudulent behavior warrant not only an injunction as to § 4c(b) and the Regulations Rogers violated but also a permanent ban on his participation in commodities trading. *See CFTC v. King*, 2007 WL 1321762, at *4 (permanently enjoining defendant from engaging in any activity related to commodity trading after his misappropriation of client funds); *CFTC v. Wilshire Inv. Mgmt. Corp.*, 407 F. Supp. 2d 1304, 1314 (permanently enjoining defendants

11

from engaging in commodity related activities due to omissions and misrepresentations made to clients). Because there is a reasonable likelihood of future commodities law violations, the Court GRANTS Plaintiff's motion and permanently enjoins Defendant Rogers from violating § 4c(b) of the CEA and Regulations 1.1(b), 32.9, and 32.11 and also permanently enjoins Rogers from engaging in commodity related activity, including soliciting customers or accepting customer funds.

**B.     Restitution & Disgorgement**

The CFTC next asks the Court to order Rogers to pay restitution of $10,959,181 to defrauded investors. (Pl.'s Br. at 25) While the CFTC also seeks disgorgement of Rogers's ill-gotten gains in the amount of $10,959,181, it requests that this relief be coterminous with any restitution award. The Court finds these requests for relief to be redundant and will only consider a single award of $10,959,181. In order to maintain consistency with the judgment in the related SEC enforcement action, the Court will treat any such relief as a disgorgement of Defendant Rogers's illicit gains from the PIC scheme. In the instant case, the amount ordered to be disgorged and the amount reached using the common formula for restitution are one and the same.

An order of disgorgement achieves two important aims. Not only does it "deprive[]the wrongdoer of benefits derived from unlawful conduct but it also effectuates the purpose underlying the Commodities Exchange Act—protection of the investor." *CFTC v. British Am. Commodity Options Corp.*, 788 F.2d 92, 94 (2nd Cir. 1986). The Second Circuit provides guidance on ordering disgorgement, expounding that "The amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation; any risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996) (internal quotation marks and citations omitted). Here, the receiver has provided the Court with a forensic accountant's calculation of the

amount of money Rogers received from investors—$11,891,608—as well as the amount forensic accountants found that Rogers and PIC returned to investors—$932,427. (*See* Crawford Decl.¶¶ 6-9 & Exs. C & E at APP 1997-98, 2525-28, & 2531)  Having found that Defendant Rogers violated the anti-fraud provisions of the CEA, the Court orders him to disgorge the gains from his fraudulent activity, $10,959,181—the money he received from PIC clients less the money paid back to those clients as premiums.

D.    **Civil Monetary Penalty**

Finally, the CFTC requests that the Court order Defendant Rogers to pay a civil monetary penalty of three times the gain from his fraudulent conduct—$36,372,609.  The CEA permits a district court "to impose, on a proper showing, on any person found in the action to have committed any violation a civil penalty in the amount of not more than the higher of $100,000[6] or triple the monetary gain to the person for each violation." 7 U.S.C. § 13a-1(d)(1).  The court may use such a fine as a deterrent of future violations, but the amount of the fine "should be proportional to the gravity of the offenses committed." *CFTC v. Brockbank*, 505 F. Supp. 2d 1169, 1177 (D. Utah 2007).  Nevertheless, the Court should remain "realistic and not set a figure which is impossible for a defendant to comply with due to lack of monetary resources." *Id.* (quoting *CFTC v. Heffernan*, 274 F. Supp. 2d 1375, 1378 (S.D. Ga. 2003)).  In the instant case, Defendant Rogers defrauded 161 investors out of $10,959,181—a very serious violation indeed.  However, it is hardly realistic to believe that Rogers might ever be able to pay a fine of $36,372,609 as requested by the CFTC.  Mr. Rogers is currently incarcerated and likely to remain so until 2015.  The only funds Defendant

---

[6]The amount of $100,000 has been raised to $120,000 for violations committed between October 23, 2000 and October 22, 2004 and has been raised to $130,000 for violations committed on or after October 23, 2004.  17 C.F.R. § 143.8(a)(1).  Rogers's violation spans both these time periods.

13

appears to have are the $101.63 he has in an account at the FPC Sheridan institution where he is confined. (*See* Application to Proceed In Forma Pauperis, doc. 271, 3:05-cv-0415-B) Even with such bleak prospects for payment, the Court recognizes the necessity of such a penalty given the gravity of Rogers's violations. Accordingly, the Court orders Defendant Rogers to pay a civil monetary penalty of $120,000 for his violations of the CEA.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment on all claims in favor of the CFTC. To that end, the Court permanently enjoins Defendant Rogers from violating the aforementioned sections of the commodities laws and orders him to disgorge his gains of $10,959,181. Rogers is further ordered to pay prejudgment interest on that amount of $2,108,662.[7] Additionally, Rogers is ordered to pay a civil monetary penalty of $120,000. Plaintiff CFTC shall submit to the Court a proposed final judgment within ten days of the date of this order.

**SO ORDERED.**

**SIGNED December 28th, 2007.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[7]Because the disgorgement ordered in the instant case is intended to be coterminous with, not in addition to, the disgorgement ordered in *SEC v. Premium Income Corp., et al.*, 3:05-cv-0415-B, the Court orders Rogers to pay the same amount of prejudgment interest that he is required to pay in the SEC litigation.